## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CECILE CASEY**
4403 Third Street SE
Washington, D.C. 20032

and

**RODNEY FOUST**
3308 Randall Road
Suitland, MD 20746

on behalf of themselves and all others
similarly situated,

                Plaintiffs,

     v.

**PARTS AUTHORITY, LLC**
c/o Corporation Service Company
1090 Vermont Ave. NW
Washington, D.C. 20005

**PARTS AUTHORITY, INC.**
c/o Corporation Service Company
1090 Vermont Ave. NW
Washington, D.C. 20005

**NORTHEAST LOGISTICS, INC. d/b/a
"Diligent Delivery Systems"**
c/o CT Corporation System
1999 Bryan St., Suite 900
Dallas, TX 75201

and

**DAO LOGISTICS, INC. d/b/a "Diligent
Delivery Systems"**
c/o Dave Agbor
7661 Woodpark Lane
Suite 103
Columbia, MD 21046,

                Defendants.

Case No. _____

**JURY TRIAL DEMANDED**

## COLLECTIVE AND CLASS ACTION COMPLAINT

Plaintiffs Cecile Casey and Rodney Foust, individually and on behalf of other similarly situated persons, state as follows for their Complaint against Defendants Parts Authority, LLC, Parts Authority, Inc., Northeast Logistics, Inc. d/b/a "Diligent Delivery Systems," and DAO Logistics d/b/a "Diligent Delivery Systems" (collectively, "Defendants").

### PRELIMINARY STATEMENT

1.   Defendants Parts Authority, LLC and Parts Authority, Inc. together own and operate a chain of approximately 200 automobile parts sales and distribution stores, including stores located in the District of Columbia, Maryland and Virginia.

2.   Parts Authority's stores routinely employ auto parts delivery drivers hired through staffing agencies such as Northeast Logistics, Inc. d/b/a "Diligent Delivery Systems" and DAO Logistics, Inc. d/b/a "Diligent Delivery Systems" (hereinafter, collectively, "Diligent") which are joint employers of these delivery drivers.

3.   Defendants routinely misclassify those delivery drivers hired through staffing agencies as "independent contractors."

4.   Pursuant to their policies and practices, Defendants have failed to pay overtime wages to the delivery drivers misclassified as "independent contractors" in violation of the Fair Labor Standards Act ("FLSA"), the District of Columbia Minimum Wage Act ("DCMWA"), and the Maryland Wage and Hour Law ("MWHL").

5.   Pursuant to their policies and practices, Defendants failed to reimburse these misclassified delivery drivers for the cost of driving their own vehicles to deliver Parts Authority's auto parts to Parts Authority's customers, which causes their net wages to fall below, or to fall further below, the federal, District of Columbia and Maryland minimum wage rates (nominal wage

rate – unreimbursed vehicle expenses = subminimum net wages) in violation of the FLSA, DCMWA, MWHL and the Virginia Minimum Wage Act ("VMWA").

6.  Plaintiffs assert the FLSA claims on behalf of themselves and all Parts Authority's delivery drivers hired through Defendant DAO Logistics, Inc. and classified as "independent contractors" who have worked for Defendants in Washington, D.C., Maryland and Virginia within three years of filing the Complaint in this action plus periods of agreed tolling, tolling pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1974), and equitable tolling.

7.  Plaintiffs assert the DCMWA claims on behalf of themselves and all Parts Authority's delivery drivers hired through Defendant DAO Logistics, Inc. and classified as "independent contractors" who have worked for Defendants in Washington, D.C. within three years of filing the Complaint in this action plus periods of agreed tolling, tolling pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1974), and equitable tolling.

8.  Plaintiff Foust asserts the MWHL claims on behalf of himself and all Parts Authority's delivery drivers hired through Defendant DAO Logistics, Inc. and classified as "independent contractors" who have worked for Defendants in Maryland within three years of filing the Complaint in this action plus periods of agreed tolling, tolling pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1974), and equitable tolling.

9.  Plaintiff Foust asserts the VMWA claim on behalf of himself and all Parts Authority's delivery drivers hired through Defendant DAO Logistics, Inc. and classified as "independent contractors" who have worked for Defendants in Virginia within two years of filing the Complaint in this action plus periods of agreed tolling, tolling pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1974), and equitable tolling.

## JURISDICTION AND VENUE

10. The FLSA authorizes court actions by private parties to recover damages for violation of the FLSA's wage and hour provisions. 29 U.S.C. § 216(b). Jurisdiction over the FLSA claims asserted herein is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question jurisdiction).

11. The DCMWA authorizes court actions by private parties to recover damages for violation of the DCMWA's wage and hour provisions. D.C. Code § 32-1012. Jurisdiction over the DCMWA claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims).

12. The MWHL authorizes court actions by private parties to recover damages for violation of the MWHL's wage and hour provisions.  Md. Lab. & Empl. Code § 3-427.  Jurisdiction over the MWHL claims asserted herein is based on 28 U.S.C. § 1367 (pendent claims).

13. The VMWA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's VMWA claims is based on Va. Code Ann. § 40.1-28.12 and 28 U.S.C. § 1367 (pendent claims).

14. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) because Defendants conducted business in this District, Defendants employed delivery drivers in this District, and a substantial part of the events giving rise to the claims occurred in this District.

## STATUTE OF LIMITATIONS / TOLLING

15. The statute of limitations was tolled from December 12, 2016 through May 19, 2021 based on *Johnson v. Parts Authority, LLC, et al.*, Case No. 16-cv-6852-DLI-RML (E.D.N.Y.) and *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1974).

16. The statute of limitations was tolled from November 19, 2019 through March 28, 2022 based on *Henao v. Parts Authority, LLC, et al.*, Case No. 19-cv-10720-LGS-BCM (S.D.N.Y.) and

*American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 552-56 (1974).

17. The statute of limitations was tolled from March 24, 2022 to March 22, 2024 based on tolling agreed between Plaintiff Casey and Diligent.

18. Plaintiff Casey's statute of limitations was tolled from the filing of her arbitration claim with the American Arbitration Association ("AAA") on February 22, 2024 until Diligent's recent refusal to arbitrate that claim.

## PARTIES

19. Defendant Parts Authority, LLC is a Delaware limited liability company maintaining its principal place of business at 3 Dakota Drive, Suite 110, New Hyde Park, New York, 11042.

20. Defendant Parts Authority, Inc. is a New York corporation that maintains its principal place of business at 3 Dakota Drive, Suite 110, New Hyde Park, New York, 11042.

21. Defendants Parts Authority, LLC and Parts Authority, Inc. (together, "Parts Authority") comprise a "single employer" or "single integrated enterprise" as they share interrelated operations, centralized control of labor relations, common management, and common ownership or financial control. Based on knowledge and information, Yaron Rosenthal owns a substantial interest in each of the Parts Authority Defendant entities, during a substantial portion of the relevant time period he has served as the Chief Executive Officer ("CEO") and principal of both Parts Authority Defendant entities, and during a substantial portion of the relevant time period he has maintained ultimate control of all Parts Authority's business operations.

22. Alternatively and/or cumulatively, Defendants Parts Authority, LLC and Parts Authority, Inc. constitute "joint employers" with respect to the delivery drivers as they share authority to hire and fire delivery drivers, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours

and other employment records, handle payroll and insurance decisions, and supervise the employees.

23. Alternatively and/or cumulatively, because the work performed by the delivery drivers simultaneously benefited Defendants Parts Authority, LLC and Parts Authority, Inc. and/or directly or indirectly furthered their joint interests, and because Defendants Parts Authority, LLC and Parts Authority, Inc. are not completely disassociated with respect to the employment of the delivery drivers and may be deemed to share control of the delivery drivers, either directly or indirectly, by reason of the fact that Defendants Parts Authority, LLC and Parts Authority, Inc. either control, are controlled by, or are under common control with, the other, Defendants Parts Authority, LLC and Parts Authority, Inc. are collectively the "joint employers" of the delivery drivers under the broad definition of "employer" provided by NYLL.

24. Defendant Northeast Logistics, Inc. doing business as "Diligent Delivery Systems" is a Texas corporation maintaining its primary place of business at 9200 Derrington Road, Suites 100 & 200, Houston, Texas, 77064, which, during all times relevant, served as Parts Authority's agent with respect to certain employment actions and decisions and supplied Parts Authority with delivery drivers to work in this district.

25. During times relevant, Defendant Northeast Logistics, Inc. contracted with Defendant DAO Logistics, Inc. to hire delivery drivers for Northeast Logistics, Inc. and Parts Authority and/or Defendant Northeast Logistics, Inc. referred delivery engagements to DAO Logistics, Inc. Based on information and belief, through that contract Defendant Northeast Logistics, Inc. dictated, controlled and regulated all of Defendant DAO Logistics, Inc.'s actions pled herein.

26. Defendant DAO Logistics, Inc. doing business as "Diligent Delivery Systems" is a Maryland corporation maintaining its primary place of business at 7661 Woodpark Lane, Suite

103, Columbia, Maryland, 21046, which, during all times relevant, served as an agent for Parts Authority and Diligent with respect to certain employment actions and decisions and supplied Parts Authority with delivery drivers to work in this district.

27. All Defendants constitute "joint employers" with respect to the delivery drivers as they share authority to hire and fire them, determine rate and method of pay, administer discipline, control work schedules and other terms and conditions of employment, maintain records of hours and other employment records, handle payroll and insurance decisions, and supervise the employees.

28. During times relevant, Plaintiff Cecile Casey was a resident of Washington, D.C.  From approximately June 2020 to December 2021, Plaintiff Casey was employed as an automotive parts delivery driver at Parts Authority's store located at 2901 Minnesota Avenue SE, Washington, D.C. 20019. Plaintiff Casey's consent to pursue a claim under the FLSA is attached as "Exhibit 1."

29. During times relevant, Plaintiff Rodney Foust was a resident of Washington, D.C. From approximately early 2019 to December 2021, Plaintiff Foust was employed as an automotive parts delivery driver at Parts Authority's stores located at 4001 Lee Highway, Arlington, Virginia, 22207, 2901 Minnesota Avenue SE, Washington, D.C., 20019, 5001 Kenilworth Avenue, Hyattsville, Maryland, 20781, and 6105 Greenbelt Road, Berwyn Heights, Maryland, 20740. Plaintiff Foust's consent to pursue a claim under the FLSA is attached as "Exhibit 2."

## PERTINENT FACTS

### Parts Authority's Business

30. Parts Authority owns and operates a chain of approximately 200 automobile parts sales and distribution stores, including stores located in the District of Columbia, Maryland and Virginia.

31. The primary function of these stores is to sell automotive parts to Parts Authority's

customers, whether customers purchase those parts in Parts Authority's stores or have the parts delivered.

32. Each of Parts Authority's stores employs delivery drivers.

33. Parts Authority's delivery drivers share the same primary job duty of delivering automotive parts to Parts Authority's customers using their personal automobiles.

### Defendants' Treatment of Delivery Drivers

34. Defendants have similarly treated their delivery drivers as:

    a.    Defendants have substantially controlled the delivery drivers' work activities and schedules;

    b.    The delivery drivers have been economically dependent on Defendants;

    c.    Defendants have scheduled the delivery drivers to work full time or longer hours, thereby precluding the delivery drivers from earning substantial income from other sources or engaging in substantial independent business activities;

    d.    The delivery drivers' work assigned by Parts Authority has constituted an integral part of Parts Authority's automotive parts sales and delivery business and/or Parts Authority has assigned the delivery drivers to perform Parts Authority's core business activity of delivering automotive parts to Parts Authority's customers;

    e.    The delivery drivers' work assigned by Diligent has constituted an integral part of Diligent's core business activity of providing labor and staffing services;

    f.    The delivery drivers do not exercise managerial skill which affects their opportunity for profit or loss;

    g.    The delivery drivers do not hold meaningful opportunity for profit or loss as part of their duties performed for Defendants;

    h.    Defendants have compensated the delivery drivers through daily or hourly wages such that each delivery driver earns the same amount during his or her employment period, regardless of job performance and such that each delivery driver has no opportunity to increase earnings based on entrepreneurial or business skills;

    i.    The delivery drivers do not solicit additional work for themselves from Parts Authority's customers or others;

j.     The delivery drivers have not advertised their services as automotive parts delivery drivers;

k.     The delivery drivers have not purchased or maintained inventories of automotive parts for sale or distribution to customers;

l.     The delivery drivers have not rented, leased or purchased retail, warehousing or other commercial space to maintain inventories of automotive parts to deliver to customers;

m.     The delivery drivers have not scheduled deliveries or managed time tables for delivery of automotive parts to Parts Authority's customers;

n.     The delivery drivers have invested relatively small amounts in equipment and supplies needed to perform their duties for Defendants compared to the value of Defendants' investment in their own business, inventory, premises, operating systems, advertising, name recognition, goodwill, labor, overhead, etc.;

o.     The delivery drivers' work does not encompass any special skill, and only requires ordinary ability to drive a vehicle and follow Defendants' instructions;

p.     The delivery drivers' employments have typically lasted relatively long-term, such as Plaintiff Foust's service for Defendants that lasted longer than nearly three years; and

q.     Defendants maintain the ability to exercise meaningful control, and do exercise meaningful control, over the delivery drivers, including, but not limited to:

    i.     training delivery drivers to use Parts Authority's electronic devices, follow Parts Authority's instructions, and perform deliveries according to Parts Authority's process;

    ii.     assigning the delivery drivers' work schedules;

    iii.     assigning the beginning and ending times of the delivery drivers' shifts;

    iv.     requiring the delivery drivers to report to Parts Authority's facilities at the beginning of their scheduled shifts to obtain automotive parts for delivery and receive delivery assignments;

    v.     requiring the delivery drivers to inform Diligent's supervisor that they had arrived at work;

vi.    requiring the delivery drivers to report unavailability for work to Diligent;

vii.    controlling the delivery drivers' ability to take breaks from work;

viii.    assigning/dispatching all routes and deliveries to the delivery drivers;

ix.    monitoring and supervising the delivery drivers' work performance;

x.    requiring delivering drivers to return to delivery locations to correct mistakes;

xi.    counseling the delivery drivers regarding their work performance;

xii.    assigning/dispatching all deliveries to the delivery drivers;

xiii.    requiring delivery drivers to check parts and orders before leaving the store;

xiv.    requiring delivery drivers to carry Parts Authority's electronic devices which showed instructions and assignments;

xv.    tracked delivery drivers' locations through those electronic devices;

xvi.    warning the delivery drivers of discipline based on their performance and/or conduct, including, but not limited to, warning some of the delivery drivers of termination;

xvii.    disciplining some of the delivery drivers based on performance and/or conduct, including, but not limited to, terminating some of the delivery drivers;

xviii.    instructing the delivery drivers not to talk on the telephone while in Parts Authority's facilities;

xix.    requiring the delivery drivers to call Parts Authority dispatchers to report their arrival at customers;

xx.    requiring the delivery drivers to obtain signatures of Parts Authority's customers to verify deliveries of automotive parts; and

xxi.    requiring the delivery drivers to retrieve and return parts from Parts Authority's customers to Parts Authority stores.

***Defendants' Payment of Delivery Drivers***

35. Defendants typically required the delivery drivers to work in excess of 40 hours per

week.

36. For example, Defendants typically required Plaintiffs Casey and Foust to work from 8:00 a.m. to 6:00 p.m. Monday through Saturday, or longer hours, typically without breaks.

37. Pursuant to their policy and practice, Defendants failed and refused to pay Plaintiff and their other delivery drivers overtime wages, equal to at least one and one-half times their regular wage rates, for work performed in excess of 40 hours per week.

38. Defendants typically failed and refused to pay Plaintiffs and other delivery drivers at least the applicable federal or state minimum wage rate.

39. For example, Defendants typically paid Plaintiff Casey and Foust approximately $500.00 each per week while they typically worked at least 60 hours per week, which equates to $8.33 or less per hour ($600.00 per week / 60 work hours per week = $8.33 per hour), which was less than the 2020 to 2021 District of Columbia minimum wage rates of $13.25 to $15.20 per hour in effect during Plaintiffs' employments and the Maryland minimum wages of $10.10 to $11.75 in effect during that time, even before subtracting unreimbursed vehicle costs.

40. Upon information and belief, Defendants similarly failed and refused to pay numerous other delivery drivers at least the applicable federal or state minimum wage.

***Under-Reimbursement of Delivery Drivers***

41. Defendants have required the delivery drivers to supply operable, legally-compliant and insured vehicles to deliver Parts Authority's automotive parts to customers.

42. Delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses while delivering automotive parts for the primary benefit of Defendants.

43. Pursuant to their policy and practice, Defendants uniformly failed and refused to reimburse the delivery drivers for the vehicle costs incurred in performing their jobs for

Defendants' benefit.

44. Defendants' conduct is tantamount to a highly unreasonable reimbursement of the delivery drivers' vehicle expenses incurred in performing their jobs.

45. During Plaintiff Foust's employment, the IRS business mileage reimbursement rate ("IRS rate") ranged between $0.56 and $0.58 per mile.

46. These publicly-available vehicle reimbursement rates represent a reasonable approximation of the average cost of operating a vehicle for use in delivering Parts Authority's automotive parts to customers.

47. The driving conditions associated with a delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures, cause delivery drivers to experience lower gas mileage, higher maintenance costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver.

48. Defendants' systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to Defendants such that the wages Defendants' pay to the delivery drivers are not paid free and clear of all outstanding obligations to Defendants.

49. Defendants fail to reasonably approximate the amount of their delivery drivers' automobile expenses to such an extent that those delivery drivers' net wages are diminished beneath the applicable federal or state minimum wage.

50. For example, Plaintiffs Casey and Foust averaged approximately 500 or more delivery miles per week for Parts Authority.

51. During the employments of Plaintiffs Casey and Foust, the lowest IRS standard business mileage reimbursement rate was $0.56 per mile. This rate reasonably approximates the

automobile expenses incurred in delivering automotive parts. Using the IRS rate as a reasonable approximation of Plaintiffs' automobile expenses, every mile driven on the job decreased their net wages by approximately $0.56 ($0.56 - $0.00 reimbursement).

52. Plaintiffs Casey and Foust "kicked back" to Defendants approximately $280.00 on average per week (approximately 500 average miles per week x $0.56 under-reimbursement per mile = $280.00 per week "kickback"), which equates to an hourly "kickback" of approximately $4.67 ($280.00 weekly "kickback" / 60 hours per week = $4.67 per hour "kickback").

53. Because Plaintiffs Casey and Foust were paid about $8.33 per hour or less before deducting unreimbursed job expenses, the under-reimbursed vehicle expenses caused them to receive subminimum net wages of approximately $3.66 per hour (*e.g.,* $8.33 or less hourly wage nominally paid - $4.67 per hour kickback = $3.66 or less per hour subminimum net wage).

54. By comparison, the District of Columbia minimum wage rates ranged from $13.25 to $15.20 per hour Plaintiff Foust's employment, the Maryland minimum wage rates ranged from $10.10 to $11.75 per hour during that time, and the Virginia minimum wage rates ranged from $7.25 to $9.50 per hour during that time.

55. Based on information and belief, all of Defendants' delivery drivers had similar experiences to those of Plaintiffs. They were subject to the same policy of failing to reimburse for vehicle costs incurred on the job, incurred similar automobile expenses, completed deliveries of similar distances and at similar frequencies, and were paid similar nominal wage rates before deducting unreimbursed business expenses.

56. Because Defendants paid their delivery drivers similar wage rates, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause violations of the applicable minimum wage rates

during some or all workweeks.

*Notice and Willfulness*

57. Defendants' failures, including but not necessarily limited to, their failures to pay overtime wages, low wage rates and lack of vehicle reimbursements, have been a frequent complaint of at least some of Defendants' delivery drivers, yet Defendants continued to fail and refuse to pay the delivery drivers overtime wages, minimum wages or vehicle cost reimbursements.

58. Defendants have been on notice of the above-alleged failures as they have been repeatedly sued and subjected to arbitration claims for the same, or very similar, violations; but Defendants have nevertheless failed and refused to correct such violations.

59. Alternatively or cumulatively, Defendants have been on notice of the above-alleged failures based on the public proliferation of similar claims lodged against pizza and food delivery companies since 2009; but Defendants have failed and refused to correct such violations.

60. Alternatively or cumulatively, Defendants have maintained the information needed to detect their own violations, but Defendants have failed and refused to correct such violations.

61. Defendants have acted without a good faith basis to believe that their underpayments of wages and other violations alleged herein have been in compliance with the law in that Defendants knowingly, deliberately and/or voluntarily disregarded their obligations to pay the delivery drivers overtime, minimum wages, and vehicle reimbursements.

*Net Impact*

62. The net impact of Defendants' policies and practices, instituted and approved by company managers, is that Defendants have acted without a good faith basis to believe that their underpayment of wages were in compliance with the law, in that Defendants (a) failed to pay the delivery drivers legally-required overtime wages, (b) failed to pay the delivery drivers legally-

required minimum wages, and (c) failed to reimburse the delivery drivers for automobile expenses to such an extent that Defendants further reduced their net wages below the applicable minimum wage rates.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### FLSA Collective Actions

63. Plaintiffs bring Counts I and II as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all Parts Authority delivery drivers hired through Defendant DOA Logistics, Inc. during the recovery period.

64. Plaintiffs individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging Defendants' practice of failing to pay employees federal overtime and minimum wages.

65. The number and identity of other plaintiffs yet to opt-in may be ascertained from Defendants' records, and potential class members may be notified of the pendency of this action via direct mail, text, and email.

66. Plaintiffs and all of the delivery drivers are similarly situated in that:

   a.   Their work has been controlled by Defendants.

   b.   They have worked as delivery drivers for Defendants delivering automotive parts to Parts Authority's customers using automobiles not owned or maintained by Defendants;

   c.   Defendants misclassified all of them as "independent contractors;"

   d.   They have been economically dependent on Defendants;

   e.   They have not operated automotive parts delivery businesses on their own while working for Defendants;

   f.   Defendants required them to work full time or more than full time, thereby precluding them from earning income from other sources or engaging in independent business activities;

   g.   Their work constitutes an integral part of Parts Authority's automotive parts

sales and delivery business and an integral part of Diligent's labor and staffing business;

h.    They have performed Parts Authority's core business of delivering automotive parts to Parts Authority's customers;

i.    They have not exercised managerial skill which affects their opportunity for profit or loss;

j.    They have not experienced meaningful opportunity for profit or loss as part of their duties performed for Defendants;

k.    They have been compensated through daily or hourly wages such that each delivery driver earns the same amount during his or her employment period, regardless of job performance and has no opportunity to increase earnings based on entrepreneurial or business skills;

l.    They have not purchased an inventory of automotive parts to distribute to customers;

m.    They have not solicited additional work from Parts Authority's customers or others;

n.    They have not advertised their services as automotive parts delivery drivers;

o.    They have not purchased, rented or leased retail, warehousing or other commercial space to maintain inventories of automotive parts to deliver to customers;

p.    They have not scheduled deliveries or managed time tables for delivery of automotive parts to Parts Authority's customers;

q.    They have invested relatively small amounts in equipment and supplies needed to perform their duties for Defendants compared to the value of Defendants' investments in their own business, inventory, premises, operating systems, advertising, name recognition, goodwill, labor, overhead, etc.;

r.    Their work does not entail any special skill, and only requires ordinary ability to drive and follow Defendants' instructions;

s.    They typically have performed work for Defendants over relatively-long and indefinite lengths of time;

t.    Defendants compensated them through similar wage rates;

u.    Defendants failed and refused to pay them federal overtime wages;

v.    Defendants failed and refused to pay them federal minimum wages;

w.    They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

x.    They incurred similar vehicle costs in performing their duties for Defendants; and

y.    Defendants failed and refused to reimburse them for vehicle costs incurred on the job, thus reducing their effective wages below the legal minimum.

***Washington, D.C. Class Action***

67. Plaintiffs bring Counts III and IV of this Complaint as a class action under Fed. R. Civ. P. 23 on behalf of themselves and as the Class Representatives of the following persons:

All current and former delivery drivers hired through Defendants DAO Logistics, Inc. who have worked for Defendants in the District of Columbia at any time since the date three years preceding the filing of the Complaint in this action plus periods of tolling and have been classified as "independent contractors" (hereinafter the "Washington, D.C. Class").

68. The Washington, D.C. claims, if certified for class-wide treatment, are brought on behalf of all similarly situated persons who do not opt-out of the Washington, D.C. Class.

69. The Washington, D.C. claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

70. The Washington, D.C. Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all Washington, D.C. Class members in a single action is impracticable. Washington, D.C. Class members may be informed of the pendency of this class action through direct mail and/or email.

71. Questions of fact and law common to the Washington, D.C. Class predominate over any questions affecting only individual members. The questions of law and fact common to the Washington, D.C. Class arising from Defendants' actions include, without limitation, the following:

a.  Whether Defendants misclassified Washington, D.C. Class members as "independent contractors" exempt from the DCMWA;

b.  Whether Defendants exercised a substantial degree of control over the Washington, D.C. Class members' work;

c.  Whether Washington, D.C. Class members performed work integral to Defendants' business operations;

d.  Whether Washington, D.C. Class members have had opportunity for profit or loss depending on managerial skill;

e.  Whether the Washington, D.C. Class members' investment in the work was substantial compared to Defendants' investment in their business;

f.  Whether the Washington, D.C. Class members' work has required special skills and initiative;

g.  Whether the Washington, D.C. Class members' work was typically long term;

h.  Whether Defendants failed to pay Washington, D.C. Class members minimum wages in violation of the DCMWA;

i.  Whether Defendants failed to reasonably reimburse Washington, D.C. Class members for their vehicle costs incurred in performing their duties for Parts Authority; and

j.  Whether Defendants failed to pay Washington, D.C. Class members net wages equal to at least the Washington, D.C. minimum wage after deduction of unreimbursed vehicle costs incurred on the job.

72. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

73. Plaintiffs' claims are typical of those of the Washington, D.C. Class in that:

a.  Plaintiffs and the Washington, D.C. Class have worked as delivery drivers for Defendants;

b.  Plaintiffs and the Washington, D.C. Class have performed similar job duties for Defendants;

c.      Plaintiffs and the Washington, D.C. Class have been subjected to the same, or at least very similar, treatment and control by Defendants as set forth in detail above;

d.      Defendants failed to pay Plaintiffs and the Washington, D.C. Class overtime wages;

e.      Defendants failed to pay Plaintiffs and the Washington, D.C. Class Washington, D.C.'s minimum wage;

f.      Plaintiffs and the Washington, D.C. Class incurred vehicle costs in performing their duties for Defendants; and

g.      Defendants failed to reimburse Plaintiffs and the Washington, D.C. Class for their vehicle costs incurred in performing their duties for Parts Authority.

74. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Washington, D.C. Class. The presentation of separate actions by individual Washington, D.C. Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Washington, D.C. Class members to protect their interests.

75. Plaintiffs are adequate representatives of the Washington, D.C. Class because they are members of the Washington, D.C. Class and their interests do not conflict with the interests of the members of the Washington, D.C. Class they seeks to represent. The interests of the Washington, D.C. Class will be fairly and adequately protected by Plaintiffs and their counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

76. Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Washington, D.C. Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result

in inconsistent adjudications, while a single case can determine, with judicial economy, the rights

of all Washington, D.C. Class members.

***Maryland Class Action***

77. Plaintiff Foust brings Count IV and V of this Complaint as a class action under Fed. R.

Civ. P. 23 on behalf of himself and as the Class Representative of the following persons:

> All current and former delivery drivers hired through Defendant DAO Logistics,
> Inc. who have worked for Defendants in the State of Maryland at any time since
> the date three years preceding the filing of the Complaint in this matter plus periods
> of tolling and have been classified by Defendants as "independent contractors"
> (hereinafter the "Maryland Class").

78. The Maryland claims, if certified for class-wide treatment, are brought on behalf of all

similarly situated persons who do not opt-out of the Maryland Class.

79. The Maryland claims satisfy the numerosity, commonality, typicality, adequacy and

superiority requirements of a class action under Rule 23(a).

80. The Maryland Class sought satisfies the numerosity standard because it is comprised

of at least hundreds of persons who are geographically dispersed. As a result, joinder of all

Maryland Class members in a single action is impracticable. Maryland Class members may be

informed of the pendency of this class action through direct mail and/or email.

81. Questions of fact and law common to the Maryland Class predominate over any

questions affecting only individual members. The questions of law and fact common to the

Maryland Class arising from Defendants' actions include, without limitation, the following:

> a.    Whether Defendants misclassified Maryland Class members as
>       "independent contractors" exempt from the MWHL;
>
> b.    Whether Defendants exercised a substantial degree of control over the
>       Maryland Class members' work;
>
> c.    Whether Maryland Class members performed work integral to Defendants'
>       business operations;

d.  Whether Maryland Class members have had opportunity for profit or loss depending on managerial skill;

e.  Whether the Maryland Class members' investment in the work was substantial compared to Defendants' investment in their business;

f.  Whether the Maryland Class members' work has required special skills and initiative;

g.  Whether the Maryland Class members' work was typically long term;

h.  Whether Defendants failed to pay overtime wages to the Maryland class members;

i.  Whether Defendants failed to pay Maryland Class members minimum wages in violation of the MWHL;

j.  Whether Defendants failed to reasonably reimburse Maryland Class members for their vehicle costs incurred in performing their duties for Defendants; and

k.  Whether Defendants failed to pay Maryland Class members net wages equal to at least the Maryland minimum wage after deduction of unreimbursed vehicle costs incurred on the job.

82. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

83. Plaintiff Foust's claims are typical of those of the Maryland Class in that:

a.  Plaintiff Foust and the Maryland Class have worked as delivery drivers for Defendants;

b.  Plaintiff Foust and the Maryland Class have performed similar job duties for Defendants;

c.  Plaintiffs Foust and the Maryland Class have been subjected to the same, or at least very similar, treatment and control by Defendants as set forth in detail above;

d.  Defendants failed to pay overtime wages to Plaintiff Foust and the Maryland Class;

e.  Defendants failed to pay Plaintiff Foust and the Maryland Class Maryland's minimum wage;

f.  Plaintiff Foust and the Maryland Class incurred vehicle costs in performing their duties for Defendants; and

g.  Defendants failed to reimburse Plaintiff Foust and the Maryland Class for their vehicle costs incurred in performing their duties for Defendants.

84. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the Maryland Class. The presentation of separate actions by individual Maryland Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Maryland Class members to protect their interests.

85. Plaintiff Foust is an adequate representative of the Maryland Class because he is a member of the Maryland Class and his interests do not conflict with the interests of the members of the Maryland Class. The interests of the Maryland Class will be fairly and adequately protected by Plaintiff Foust and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

86. Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Maryland Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Maryland Class members.

***Virginia Class Action***

87. Plaintiff Foust brings Count VII of this Complaint as a class action under Fed. R. Civ.

P. 23 on behalf of himself and as the Class Representative of the following persons:

> All current and former delivery drivers hired through Defendant DAO Logistics, Inc. who have worked for Defendants in the State of Virginia at any time since the date three years preceding the filing of the Complaint in this matter plus periods of tolling and have been classified by Defendants as "independent contractors" (hereinafter the "Virginia Class").

88. The Virginia claim, if certified for class-wide treatment, is brought on behalf of all similarly situated persons who do not opt-out of the Virginia Class.

89. The Virginia claim satisfies the numerosity, commonality, typicality, adequacy and superiority requirements of a class action under Rule 23(a).

90. The Virginia Class sought satisfies the numerosity standard because it is comprised of at least hundreds of persons who are geographically dispersed. As a result, joinder of all Virginia Class members in a single action is impracticable. Virginia Class members may be informed of the pendency of this class action through mail and/or email.

91. Questions of fact and law common to the Virginia Class predominate over any questions affecting only individual members. The questions of law and fact common to the Virginia Class arising from Defendants' actions include, without limitation, the following:

a. Whether Defendants misclassified Virginia Class members as "independent contractors" exempt from the VMWA;

b. Whether Defendants exercised a substantial degree of control over the Virginia Class members' work;

c. Whether Virginia Class members performed work integral to Defendants' business operations;

d. Whether Virginia Class members have had opportunity for profit or loss depending on managerial skill;

e. Whether the Virginia Class members' investment in the work was substantial compared to Defendants' investment in their business;

f. Whether the Virginia Class members' work has required special skills and

initiative;

g.    Whether the Virginia Class members' work was typically long term;

h.    Whether Defendants failed to pay Virginia Class members minimum wages in violation of the VMWA;

i.    Whether Defendants failed to reasonably reimburse Virginia Class members for their vehicle costs incurred in performing their duties for Defendants; and

j.    Whether Defendants failed to pay Virginia Class members net wages equal to at least the Virginia minimum wage after deduction of unreimbursed vehicle costs incurred on the job.

92. The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

93. Plaintiff Foust's claims are typical of those of the Virginia Class in that:

a.    Plaintiff Foust and the Virginia Class have worked as delivery drivers for Defendants;

b.    Plaintiff Foust and the Virginia Class have performed similar job duties for Defendants;

c.    Plaintiffs Foust and the Virginia Class have been subjected to the same, or at least very similar, treatment and control by Defendants as set forth in detail above;

d.    Defendants failed to pay Plaintiff Foust and the Virginia Class Virginia's minimum wage;

e.    Plaintiff Foust and the Virginia Class incurred vehicle costs in performing their duties for Defendants; and

f.    Defendants failed to reimburse Plaintiff Foust and the Virginia Class for their vehicle costs incurred in performing their duties for Defendants.

94. A class action is the appropriate method for the fair and efficient adjudication of this

controversy. Defendants have acted or refused to act on grounds generally applicable to the Virginia Class. The presentation of separate actions by individual Virginia Class members creates a risk of inconsistent and varying adjudications, establishing incompatible standards of conduct for Defendants, and/or substantially impairing or impeding the ability of Virginia Class members to protect their interests.

95. Plaintiff Foust is an adequate representative of the Virginia Class because he is a member of the Virginia Class and his interests do not conflict with the interests of the members of the Virginia Class.  The interests of the Virginia Class will be fairly and adequately protected by Plaintiff Foust and his counsel, who have extensive experience prosecuting complex wage and hour, employment, and class action litigation.

96. Maintenance of these claims as a class action is a fair and efficient method for adjudicating this controversy. It would be impracticable and undesirable for each member of the Virginia Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single case can determine, with judicial economy, the rights of all Virginia Class members.

## CLAIMS

### Count I:  Violation Of The FLSA By Failing To Pay Overtime Wages

97. Plaintiffs reassert and re-allege the allegations set forth above.

98. At all times material herein, Plaintiffs and other similarly situated persons have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201 *et seq.*

99. The FLSA regulates, among other things, the payment of overtime wages to employees who are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29

U.S.C. § 207(a)(1).

100. Defendants are subject to the overtime pay requirements of the FLSA because they constitute enterprises engaged in interstate commerce and their delivery drivers are engaged in interstate commerce.

101. During all times relevant to this action, Defendants were jointly the "employers" of the delivery drivers within the meaning of the FLSA. 29 U.S.C. § 203(d).

102. During all times relevant to this action, the delivery drivers were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

103. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. Despite Defendants' misclassification of the delivery drivers, none of the FLSA's exemptions apply to Plaintiffs or other similarly situated delivery drivers. *Id.*

104. Pursuant to the FLSA, employees are entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek. 29 U.S.C. § 207(a).

105. Defendants violated the FLSA by failing to pay overtime wages as required by the FLSA. 29 U.S.C. § 207(a).

106. Plaintiffs and all similarly situated delivery drivers misclassified as "independent contractors" are victims of a uniform compensation policy. On information and belief, the same unlawful compensation policy has been applied to all Defendants' delivery drivers misclassified as "independent contractors."

107. Plaintiffs and all similarly situated delivery drivers misclassified as "independent contractors" are entitled to damages equal to the mandated overtime premium pay within the three

years preceding the filing of the Complaint, plus periods of tolling, because Defendants acted willfully and knew, or showed reckless disregard for whether their conduct was prohibited by the FLSA, and dissuaded employees from asserting their legal rights by misinforming employees about those rights.

108. Defendants have not acted in good faith or with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result thereof, the delivery drivers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay permitted by 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendants are not subject to an award of liquidated damages, the delivery drivers are entitled to an award of prejudgment interest at the applicable legal rate.

109. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendants from the delivery drivers misclassified as "independent contractors." Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre- and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count I of this Complaint, Plaintiffs and all similarly situated delivery drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count II: Violation of the FLSA'S Minimum Wage Requirement

110. Plaintiffs reassert and re-allege the allegations set forth above.

111. At all relevant times herein, Plaintiffs and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§

201, *et seq.*

112. During all times relevant to this action, Defendants were jointly the "employers" of the delivery drivers within the meaning of the FLSA. 29 U.S.C. § 203(d).

113. During all times relevant to this action, the delivery drivers were Defendants' "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

114. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. Despite Defendants' misclassification of the delivery drivers as "independent contractors," none of the FLSA exemptions apply to the delivery drivers.

115. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

116. Defendants are subject to the FLSA's minimum wage requirements because they are enterprises engaged in interstate commerce, and their employees are engaged in commerce.

117. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

118. Under Section 7 of the FLSA, codified at 29 U.S.C. § 207, employees have been entitled to be compensated at a rate of at least one and one-half times their "regular rate" of pay for all time worked in excess of 40 hours per workweek.

119. As alleged herein, Defendants have reimbursed their delivery drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

120. Defendants knew or should have known that their pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage and/or provide required overtime compensation.

121. Defendants, pursuant to their policy and practice, violated the FLSA by failing and refusing to pay federal minimum wage and/or overtime compensation to Plaintiffs and other similarly situated employees.

122. Plaintiffs and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in Parts Authority's stores.

123. Plaintiffs and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each delivery driver joins this case, plus periods of tolling, because Defendants acted willfully and knew, or showed reckless disregard for, whether their conduct was unlawful.

124. Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and as a result, the delivery drivers are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find Defendants did not act in good faith and with reasonable grounds in failing to pay minimum wage and / or overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

125. As a result of the aforesaid willful violations of the FLSA's minimum wage

provisions, minimum wage compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees. Accordingly, Defendants are liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, on Count II, Plaintiffs and all similarly situated delivery drivers demand judgment against Defendants and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count III: Violation of the DCMWA by Failing to Pay Overtime Wages
### (On Behalf Of The Washington, D.C. Class)

126. Plaintiffs reassert and re-allege the allegations set forth above.

127. At all relevant times herein, Plaintiffs and the Washington, D.C. Class have been entitled to the rights, protections, and benefits provided under the DCMWA. D.C. Code § 32-1001 *et seq*.

128. The DCMWA regulates, among other things, the payment of overtime wages by "employers" who employ any person in the District of Columbia, subject to limited exemptions not applicable herein. D.C. Code §§ 32-1003(a) & 32-1004.

129. During all times relevant to this action, Defendants were the "employer" of Plaintiffs and the Washington, D.C. Class within the meaning of the DCMWA. D.C. Code § 32-1002(3).

130. During all times relevant to this action, Plaintiffs and the Washington, D.C. Class were Defendants' "employees" within the meaning of the DCMWA. D.C. Code § 32-1002(2).

131. District of Columbia employees are entitled to be compensated at a rate of "not less than 1½ times the regular rate at which the employee is employed." D.C. Code § 32-1003(c).

132. As alleged herein, Defendants failed to pay Plaintiffs and the Washington, D.C. Class regular and overtime wages required by the DCMWA.

133. Plaintiffs and the Washington, D.C. Class are entitled to damages equal to all unpaid overtime wages within three years from the date this claim is filed, plus periods of tolling.  D.C. Code § 32-1012(b)(1).

134. Plaintiffs and the Washington, D.C. Class are entitled to recover statutory penalties. *Id.*

135. Plaintiffs and the Washington, D.C. Class are entitled to recover liquidated damages equal to treble the amount of unpaid wages.  *Id.*

136. Plaintiffs and the Washington, D.C. Class are entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

137. Defendants are liable to Plaintiffs and the Washington, D.C. Class for their usual and necessary costs and attorneys' fees incurred in this action.  D.C. Code §§ 32-1012(c) & 32-1308(b).

WHEREFORE, on Count III, Plaintiffs, on behalf of themselves and the Washington, D.C. Class, demand judgment against Defendants and request: (1) compensatory damages; (2) statutory penalties; (3) liquidated damages equal to treble the amount of unpaid wages; (4) pre-judgment and post-judgment interest as provided by law; (5) attorneys' fees and litigation costs; and (6) such other relief as the Court deems fair and equitable.

### Count IV:  Violation Of The DCMWA By Failing To Pay Minimum Wage Before And After Deducting Unreimbursed Vehicle Expenses (On Behalf Of The Washington, D.C. Class)

138. Plaintiffs reassert and re-allege the allegations set forth above.

139. At all relevant times herein, Plaintiffs and the Washington, D.C. Class have been entitled to the rights, protections, and benefits provided under the DCMWA. D.C. Code § 32-1001 *et seq.*

140. The DCMWA regulates, among other things, the payment of minimum wage by "employers" who employ any person in the District of Columbia, subject to limited exemptions not applicable herein. D.C. Code §§ 32-1003(a) & 32-1004.

141. During all times relevant to this action, Defendants were the "employer" of Plaintiffs and the Washington, D.C. Class within the meaning of the DCMWA. D.C. Code § 32-1002(3).

142. During all times relevant to this action, Plaintiffs and the Washington, D.C. Class were Defendants' "employees" within the meaning of the DCMWA. D.C. Code § 32-1002(2).

143. District of Columbia employees have been entitled to be compensated at a rate of at least $8.25 per hour until June 2014, at least $9.50 per hour from July 2014 to June 2015, at least $10.50 per hour from July 2015 to June 2016, at least $11.50 per hour from July 2016 to June 2017, at least $12.50 per hour from July 2017 to June 2018, at least $13.25 per hour between July 2018 and June 2019, at least $14.00 per hour from July 2019 to June 2020, at least $15.00 per hour from July 2020 to June 2021, at least $15.20 per hour from July 2021 to June 2022, at least $16.10 per hour from July 2022 to June 2023, and at least $17.00 per hour since July 2023. D.C. Code § 32-1003; https://oag.dc.gov/worker-rights/wage-and-hour-laws.

144. The DCMWA requires that "[i]n addition to the wages required by [the DCMWA], the employer shall pay the cost of travel expenses incurred by the employee in performance of the business of the employer." 7 D.C.M.R. § 909.

145. Vehicle costs incurred in performing the job of delivery driver constitute "travel expenses incurred by the employee in performance of the business of the employer," and thus Defendants have been required to pay such vehicle costs attributable to performing the job in addition to the District of Columbia's minimum wage.

146. The DCMWA requires that "[i]n addition to the wages required by [the DCMWA],

the employer shall pay the cost of purchasing and maintaining any tools required of the employee in the performance of the business of the employer." 7 D.C.M.R. § 910.1.

147. Vehicles driven for business use constitute a "tool of the trade" and thus Defendants are required to pay for the cost of owning and maintaining a motor vehicle for business use in addition to the District of Columbia's minimum wage.

148. Defendants have violated the DCMWA by failing to pay Plaintiffs and the Washington, D.C. Class the full District of Columbia minimum wage for all time worked, after deducting unreimbursed vehicle costs incurred by their delivery drivers in performing their jobs. D.C. Code § 32-1003(a)(5)(A).

149. Alternatively, Defendants have violated the DCMWA by failing to pay Plaintiffs and the Washington, D.C. Class the cost of travel required to perform the delivery drivers' jobs in addition to the District of Columbia's minimum wage. 7 D.C.M.R. § 909.

150. Alternatively, Defendants have violated the DCMWA by failing to pay Plaintiffs and the Washington, D.C. Class the cost of owning and operating a motor vehicle for business in addition to the District of Columbia's minimum wage. 7 D.C.M.R. § 910.1.

151. Plaintiffs and the Washington, D.C. Class are entitled to recover their unpaid wages within three years of the date of filing this action, plus periods of tolling. D.C. Code § 32-1012(b)(1).

152. Plaintiffs and the Washington, D.C. Class are entitled to recover statutory penalties. *Id.*

153. Plaintiffs and the Washington, D.C. Class are entitled to recover liquidated damages equal to treble the amount of unpaid wages. *Id.*

154. Plaintiffs and the Washington, D.C. Class are entitled to an award of pre-judgment

and post-judgment interest at the applicable legal rate.

155. Defendants are liable to Plaintiffs and the Washington, D.C. Class for their usual and necessary costs and attorneys' fees incurred in this action. D.C. Code §§ 32-1012(c) & 32-1308(b).

WHEREFORE, on Count IV, Plaintiffs, on behalf of themselves and the Washington, D.C. Class, demands judgment against Parts Authority and requests: (1) compensatory damages; (2) statutory penalties; (3) liquidated damages equal to treble the amount of unpaid wages; (4) pre-judgment and post-judgment interest as provided by law; (5) attorneys' fees and litigation costs; and (6) such other relief as the Court deems fair and equitable.

### Count V:  Violation Of The MWHL By Failing To Pay Overtime Wages
### (On Behalf Of The Maryland Class)

156. Plaintiff Foust reasserts and re-alleges the allegations set forth above.

157. At all relevant times herein, Plaintiff Foust and the Maryland Class have been entitled to the rights, protections, and benefits provided under the MWHL. Md. Lab. & Empl. Code § 3-401 *et seq*.

158. The MWHL regulates, among other things, the payment of overtime wages by "employers" who employ any person in Maryland, subject to limited exemptions not applicable herein. Md. Lab. & Empl. Code §§ 3-415; 3-420; 3-401(b) & 3-415(a).

159. During all times relevant to this action, Defendants were the joint "employer" of Plaintiff Foust and the Maryland Class within the meaning of the MWHL.  Md. Lab. & Empl. Code §§ 3-401(b); 3-415 & § 3-420.

160. Maryland employees are entitled to be compensated at a rate of "at least 1.5 time the usually hourly wage." Md. Lab. & Empl. Code §§ 3-415 & 3-420.

161. As alleged herein, Defendants failed to pay Plaintiff Foust and the Maryland Class overtime wages required by the MWHL.

162. Plaintiff Foust and the Maryland Class are entitled to damages equal to all unpaid overtime wages within three years from the date this claim is filed, plus periods of tolling. *Id.*

163. Plaintiff Foust and the Maryland Class are entitled to an additional amount equal to the unpaid overtime wages as and for liquidated damages. *Id.*

164. Plaintiff Foust and the Maryland Class are entitled to recover their reasonable attorneys' fees and costs in pursuing the claim. Md. Lab. & Empl. Code § 3-427.

165. Plaintiff Foust and the Maryland Class are entitled to pre-judgment and post-judgment interest as provided by law.

WHEREFORE, on Count V, Plaintiff Foust, on behalf of himself and the Maryland Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) statutory damages pursuant to Md. Lab. & Empl. Code § 3-427; (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law, including prejudgment interest at 6% per annum on the back wages in accordance with the Maryland Constitution, Article III, § 67; and (5) such other relief as the Court deems fair and equitable.

### Count VI:  Violation Of The MWHL By Failing To Pay Minimum Wage Before Or After Deducting Unreimbursed Vehicle Expenses (On Behalf Of The Maryland Class)

166. Plaintiff Foust reasserts and re-alleges the allegations set forth above.

167. At all relevant times herein, Plaintiff Foust and the Maryland Class have been entitled to the rights, protections, and benefits provided under the MWHL. Md. Lab. & Empl. Code § 3-401 *et seq.*

168. The MWHL regulates, among other things, the payment of minimum wage by "employers" who employ any person in Maryland, subject to limited exemptions not applicable herein. Md. Lab. & Empl. Code §§ 3-413; 3-401(b) & 3-415(a).

169. During all times relevant to this action, Defendants were the joint "employer" of

Plaintiff Foust and the Maryland Class within the meaning of the MWHL. Md. Lab. & Empl. Code § 3-401(b) and § 3-413.

170. Maryland employees were entitled to be compensated at a rate of at least $7.25 per hour through 2014, at least $8.00 per hour from January 2015 to June 2015, at least $8.25 per hour from July 2015 to June 2016, at least $8.75 per hour form July 2015 to June 2016, at least $9.25 per hour from July 2017 through June 2018, at least $10.10 per hour from July 2018 through 2019, and $11.00 per hour in 2020, $11.75 in 2021, $12.50 per hour in 2022, $13.25 per hour in 2023, and $15.00 per hour in 2024. Md. Lab. & Empl. Code §§ 3-413(b) & (c) (2014-2024 versions).

171. As alleged herein, Defendants failed to pay Plaintiff Foust and the Maryland Class the minimum wage required by the MWHL after deduction of unreimbursed automobile expenses incurred in performing their job for Defendants.

172. Plaintiff Foust and the Maryland Class are entitled to damages equal to the Maryland minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date of filing this claim, plus periods of tolling.  Md. Lab. & Empl. Code § 3-427.

173. Plaintiff Foust and the Maryland Class are entitled to an additional amount equal to the difference between the wage paid to Plaintiff Foust and the Maryland Class and the wage required as and for liquidated damages. *Id.*

174. Plaintiff Foust and the Maryland Class are entitled to recover their reasonable attorneys' fees and costs in pursuing the claim.  *Id.*

175. Plaintiff Foust and the Maryland Class are entitled to pre-judgment and post-judgment interest as provided by law.

WHEREFORE, on Count VI, Plaintiff Foust, on behalf of himself and the Maryland Class,

demands judgment against Defendants and requests: (1) compensatory damages; (2) statutory damages pursuant to Md. Lab. & Empl. Code § 3-427; (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law, including prejudgment interest at 6% per annum on the back wages in accordance with the Maryland Constitution, Article III, § 67; and (5) such other relief as the Court deems fair and equitable.

### Count VII:  Violation Of The VMWA By Failing To Pay Minimum Wage Before Or After Deducting Unreimbursed Vehicle Expenses (On Behalf Of The Virginia Class)

176. Plaintiff Foust reasserts and re-alleges the allegations set forth above.

177. At all relevant times herein, Plaintiff Foust and the Virginia Class have been entitled to the rights, protections, and benefits provided under the VMWA. Va. Code Ann. § 40.1-28.8 *et seq*.

178. The VMWA regulates, among other things, the payment of minimum wage by "employers" who employ any person in Virginia, subject to limited exemptions not applicable herein. Va. Code Ann. § 40.1-28.9.

179. During all times relevant to this action, Defendants were the joint "employer" of Plaintiff Foust and the Virginia Class within the meaning of the VMWA. Va. Code Ann. § 40.1-28.9.

180. Virginia employees were entitled to be compensated at a rate of at least $7.25 per hour from the beginning of the recovery period through April 20, 2021, were entitled to be compensated at a rate of $9.50 per hour from May 1, 2021 to January 1, 2022, were entitled to be compensated at a rate of $11.00 per hour in 2022, and have been entitled to be compensated at a rate of a rate of $12.00 per hour since 2023.  Va. Code Ann. § 40.1-28.10.

181. Plaintiff Foust and the Virginia Class are entitled to damages equal to the Virginia minimum wage minus actual wages received after deducting reasonably approximated automobile

expenses within two years from the date of filing this claim plus periods of tolling. Va. Code Ann. § 40.1-28.12.

182. Plaintiff and all other members of the Virginia Class are entitled to an award of compensatory damages plus interest at eight per centum (8%) per annum upon such unpaid wages as may be due them, said interest to be awarded from the date or dates said wages were due Plaintiff and all other members of the Virginia Class. Va. Code Ann. § 40.1-28.12.

183. Plaintiff Foust and the Virginia Class are entitled to recover their reasonable attorneys' fees and costs in pursuing the claim. *Id.*

184. Plaintiff Foust and the Virginia Class are entitled to pre-judgment and post-judgment interest as provided by law.

WHEREFORE, on Count VII, Plaintiff Foust, on behalf of himself and the Virginia Class, demands judgment against Defendants and requests: (1) compensatory damages; (2) interest at 8% per annum on the unpaid wages pursuant to Va. Code Ann. § 40.1-28.12; (3) costs of litigation and attorney's fees as provided by law; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury of all issues triable by jury.

Respectfully Submitted,

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
(D.C. Bar No. 411029)
Sarah M. Block
(D.C. Bar No. 1026577)
**MCGILLIVARY STEELE ELKIN LLP**
1101 Vermont Ave NW, Suite 1000
Washington, DC 20005
Telephone: (202) 833-8855
Email: gkm@mselaborlaw.com
Email: smb@mselaborlaw.com

Jeremiah Frei-Pearson
(*pro hac vice* application forthcoming)
Todd Garber
(*pro hac vice* application forthcoming)
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
Facsimile: (914) 824-1561
jfrei-pearson@fbfglaw.com
tgarber@fbfglaw.com

Mark Potashnick, MO Bar # 41315
(*pro hac vice* application forthcoming)
**WEINHAUS & POTASHNICK**
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
markp@wp-attorneys.com

*Attorneys for Plaintiffs*