UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CECILE CASEY, *et al.*,

    *Plaintiffs*,

v.

PARTS AUTHORITY, LLC, *et al.*,

    *Defendants.*

No. 24-cv-2659 (DLF)

**MEMORANDUM OPINION**

Plaintiffs Cecile Casey and Rodney Foust, automotive parts delivery drivers for defendants Parts Authority, LLC and Parts Authority, Inc. (collectively, Parts Authority), bring this action against Parts Authority and two delivery driver contractors, Northeast Logistics, Inc. d/b/a "Diligent Delivery Systems" (Diligent), and DAO Logistics, Inc. The plaintiffs claim that the defendants engaged in a policy and practice of misclassifying drivers as independent contractors and failing to pay minimum wage and overtime, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the state wage laws of D.C., Maryland, and Virginia. Before the Court is the plaintiffs' Motion to Certify Class, Dkt. 26. For the reasons that follow, the Court will grant in part and deny in part the plaintiffs' motion.

**I.  BACKGROUND**

Parts Authority, an automobile parts and sales distributor with stores located in the District of Columbia, Maryland, and Virginia, Compl. ¶ 1, Dkt. 1, employs drivers to deliver car parts to customers, *id.* ¶¶ 32–33. Although some drivers are hired directly by Parts Authority, others are hired through staffing agencies like Diligent. *Id.* ¶ 2. Diligent in turn hires subcontractors,

including DAO Logistics, to help provide drivers to Parts Authority.  Fernando Decl. ¶ 12, Dkt. 31-1.

Plaintiffs Casey and Foust were hired by DAO Logistics to work as delivery drivers at six Parts Authority locations in D.C., Maryland, and Virginia.  Compl. ¶¶ 6–7; Foust Decl. ¶¶ 4, Dkt. 27-4; Casey Decl. ¶¶ 3–4, Dkt. 27-5.  When hired, they were classified as independent contractors, rather than employees, and paid a flat rate for their work, regardless of hours.  Compl. ¶¶ 6–7, 35–39.  Because the plaintiffs allegedly worked 60 hours per week and were required to use their own cars without reimbursement for mileage, their effective pay rate was lower than the minimum wage required by D.C., Maryland, and Virginia.  *Id.* ¶¶ 39, 51.  The plaintiffs claim that they were improperly classified as independent contractors and not paid minimum wage and overtime, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, and the state wage laws of D.C., Maryland, and Virginia.

## II.    LEGAL STANDARDS

The FLSA authorizes plaintiffs to pursue a collective action by suing on behalf of "other employees similarly situated."  29 U.S.C. § 216(b).  The FLSA's collective action procedures are minimal and require only that (1) employees be similarly situated, and (2) other employees who seek to be a party to the collective action opt in to the lawsuit by filing a written consent in the court where it is pending.  *Id*.  Rule 23 of the Federal Rules of Civil Procedure, which generally governs class-action lawsuits, does not apply to FLSA collective actions.  *See*, *e.g.*, *Thompson v. Linda And A., Inc.*, 779 F. Supp. 2d 139, 143 (D.D.C. 2011).  The D.C. Minimum Wage Act permits collective actions that are "[c]onsistent with the collective-action procedures of the Fair Labor Standards Act."  D.C. Code § 32-1308(a)(1)(C)(iii); D.C. Code § 32-1012(a).

Courts follow a two-stage process to assess whether an FLSA collective action should be certified. *Castillo v. P & R Enterprises, Inc.*, 517 F. Supp. 2d 440, 445 (D.D.C. 2007). In the first stage, referred to as "conditional certification," "the court mak[es] an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). At this stage, the plaintiffs need only make a "modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Id.* (citation and internal quotation marks omitted). All that is required is "some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected a plaintiff and the manner in which it affected other employees." *Ayala v. Tito Contractors*, 12 F. Supp. 3d 167, 170 (D.D.C. 2014) (cleaned up) (alteration in original). The standard of proof is low at this stage because its purpose is "merely to determine whether 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555. "If a plaintiff can make this showing, a court will conditionally certify the class." *Ayala*, 12 F. Supp. 3d at 170. If the court conditionally certifies the class, the second stage tasks the court with determining, "on a fuller record," whether the collective action "may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Myers*, 624 F.3d at 555. If the opt-in plaintiffs turn out not to be similarly situated, the court may dismiss their claims without prejudice and "de-certif[y]" the lawsuit. *Id.*

## III.    ANALYSIS

### A.    Conditional Certification

To obtain conditional certification, the plaintiffs must make "a modest factual showing" that they and the other potential class members "were victims of a common policy or plan that

3

violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). In other words, the conditional-certification standard turns on whether plaintiffs have "put forth a common legal theory upon which each member is entitled to relief." *Stephens v. Farmers Rest. Group*, 291 F. Supp. 3d 95, 109 (D.D.C. 2018) (citation and internal quotation marks omitted). The Court finds that the plaintiffs have cleared the low hurdle to show that other delivery drivers who worked at the same stores were unlawfully classified as independent contractors and paid less than minimum wage without overtime pay.

Both Casey and Foust attest that they were directly controlled by Parts Authority. Foust Decl. ¶¶ 15–17; Casey Decl. ¶¶ 14–16, 18. For instance, Parts Authority orchestrated route assignments, determined the order of deliveries, provided training, and required drivers to obtain permission before taking breaks. Foust Decl. ¶¶ 15–17; Casey Decl ¶¶ 14–16, 18. Casey and Foust observed the same treatment for the other DAO delivery drivers at the six stores where they worked. Foust Decl. ¶¶ 5, 22; Casey Decl. ¶¶ 4, 21. These facts support their claim that Parts Authority had a policy of treating DAO delivery drivers as employees.

The plaintiffs also state that they worked greater than 40 hours but were paid a flat rate without overtime pay. Foust Decl. ¶ 7; Casey Decl. ¶ 6. In addition, they observed other DAO delivery drivers working similar hours. Foust Decl. ¶ 8; Casey Decl. ¶ 7. In other words, the plaintiffs, along with other delivery drivers the plaintiffs observed, were not paid the equivalent of minimum wage and overtime for their work. Taken together, these facts establish a nexus between plaintiffs' treatment and the treatment of other delivery drivers at the same store locations where the plaintiffs worked.

On the other hand, the plaintiffs have not adequately supported their claim that delivery drivers servicing *other* store locations were also obligated to work long hours without adequate

pay. The plaintiffs rely primarily on a deposition of Parts Authority's Vice President, Yaron Rosenthal, taken during separate proceedings. Rosenthal testified that, among other things, Parts Authority designated the number of workers and hours needed a particular day to Diligent, who then provided the fill-in delivery drivers. Rosenthal Decl. at 33, Dkt. 27-3. But Rosenthal also testified that Parts Authority was not in charge of whether the temp drivers split shifts or which stores they were sent to on a particular day. *Id.* And nothing about the Parts Authority policies for temp drivers at other locations supports the claim those drivers worked over 40 hours without overtime pay. Indeed, the Court can identify nothing in the record that addresses delivery drivers' hours at other stores. To support their FLSA claim, the plaintiffs must establish not only that drivers at other stores should have been classified as employees, but also that they were paid less than the required minimum wage and overtime pay. The plaintiffs fail to show that drivers working at other store locations were inadequately paid.

The cases the plaintiffs point to are not to the contrary. In *Castillo*, the plaintiffs alleged that the defendant had a "centralized operation for all [relevant] employees." 517 F. Supp. 2d at 446. This centralized payroll approach supported a class for all employees, even though they worked in different buildings. *Id.* Here, by contrast, temp delivery drivers signed individual contracts with Diligent—not with Parts Authority—and it is unclear whether the named plaintiffs' experiences align with those of drivers at other stores. *See* Pls.' Ex. 11, Dkt. 27-11; Pls.' Ex. 12, Dkt. 27-12. The plaintiffs in the other cases were similarly able to establish identical unlawful policies that impacted workers across various locations. *E.g., Guarriello v. Asnani*, 517 F. Supp. 3d 1164, 1173 (D.N.M. 2021) (noting that restaurant waiters at Denny's locations were "subject to identical policies of being allowed or required to perform off the clock work"); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 956–57 (W.D. Wis. 2008) (denying

5

motion to decertify class when all plaintiffs were denied compensation for time spent walking to work areas and putting on protective gear). But here, the plaintiffs cannot point to a company-wide policy that required temp delivery drivers to work without overtime pay or adequate minimum wage.

The defendants argue the plaintiffs' declarations lack sufficient detail to support their claim that delivery drivers working at the same six stores were similarly situated. Defs.' Opp'n at 8–9, Dkt. 31. But the plaintiffs' declarations, which are based on the plaintiffs' personal observations of other drivers, *see, e.g.*, Foust Decl. ¶ 8; Casey Decl. ¶ 7, are not purely speculative, *see Ayala*, 12 F. Supp. 3d at 170. At least at this stage, the pleadings and affidavits are sufficient to meet the "low standard of proof," *Myers*, 624 F.3d at 555, that delivery drivers who performed the same job at the same Parts Authority stores as the plaintiffs received the same treatment.

On this record, the Court will conditionally certify a class of delivery drivers who were subject to the same allegedly illegal policies. It will, however, exclude from the class delivery drivers who worked at store locations other than the plaintiffs. *See Stephens*, 291 F. Supp. 3d at 112 (limiting class to employees who worked at restaurants in D.C. and Maryland when the plaintiffs failed to present evidence of a similar policy at Virginia locations); *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 55 (D.D.C. 2012) (excluding employees who worked at six hospitals from a purported class where the plaintiffs failed to "present any evidence that there was a common practice at those six hospitals"). Accordingly, the Court will conditionally certify a class of delivery drivers employed by DAO who worked at the same locations as the plaintiffs and were subject to the same independent contractor classifications and wage payments.

### B. Proposed Collective Action Notice

The plaintiffs also request that the Court approve their proposed notice to potential opt-in plaintiffs, which is attached to their motion as Exhibit 19. Dkt. 27-19. "Decisions as to whether to facilitate notice to potential plaintiffs, and how to facilitate it, are matters entrusted to the district court's discretion." *Guevara v. Spartan Enters. LLC*, No. 20-cv-1383 (JEB), 2020 WL 6870007, at *4 (D.D.C. Nov. 23, 2020) (quoting *Engers v. AT&T*, No. 98-cv-3660 (SRC), 2007 WL 1557163, at *1 (D.N.J. May 24, 2007). The Court has a managerial role in "monitoring preparation and distribution of the notice" to "ensure that it is timely, accurate, and informative." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989).

While the plaintiffs' proposed notice provides most of the necessary information, its format and structure are less than clear, and the notice includes plaintiffs that the Court will not certify. In addition to excluding those individuals, the revised notice shall make clear that it is a notice of a collective action lawsuit against the defendants and that its contents have been authorized by the Court. The revised notice also shall also explain the applicable statute of limitations to potential opt-in plaintiffs and include appropriate headings. *See, e.g.,* Notice, *Izaguirre v. Hunter Allied of Maryland, Inc.*, No. 18-cv-0965 (DLF) (D.D.C. Dec. 17, 2018), Dkt. 17. Accordingly, the parties shall confer about the contents of the revised notice. Thereafter, the plaintiffs shall refile a revised proposed notice that conforms with this opinion.

### C. Production of Contact Information

To provide notice to potential opt-in plaintiffs, the plaintiffs seek an order requiring the defendants to produce "the names, addresses, phone numbers, email addresses, and employment dates" of all potential class members. Pls.' Mot. at 27.

"Decisions in this Circuit have reached different conclusions on whether email addresses and phone numbers are discoverable in connection with collective-action notice procedures." *Stephens*, 291 F. Supp. 3d at 121.  Although "[t]he trend appears to be toward ordering the production of at least some of this information," *id.*, courts have rejected requests for telephone numbers and email addresses when there has been no showing of need and when nondisclosure is "in the interest of protecting the privacy interests of the members of the proposed collectives," *Freeman v. MedStar Health Inc.*, 187 F. Supp. 3d 19, 32 (D.D.C. 2016); *see also Blount v. U.S. Sec. Assocs.*, 945 F. Supp. 2d 88, 97 (D.D.C. 2013) (concluding that "the disclosure of phone numbers and dates of birth implicates privacy concerns and, in the Court's view, should not be required absent particularized need"); *Galloway v. Chugach Gov't Servs., Inc.*, 263 F. Supp. 3d 151, 159 (D.D.C. 2017) (limiting production to names and residential addresses).

This Court has previously authorized notice by mail and email.  *See Guzman v. GF, Inc.*, No. 19-cv-2338 (DLF), 2021 WL 2439277, at *6 (D.D.C. June 14, 2021).  But the Court did so due to the "special characteristics of the restaurant industry."  *Id.* (*quoting Stephens*, 291 F. Supp. 3d at 122).  The plaintiffs have presented no such special characteristics here.  Because the plaintiff's motion does not adequately explain why they need the requested email addresses and telephone numbers, the Court will limit the production of contact information to names, addresses, and dates of employment.

The parties also dispute who should be obligated to produce the information.  Parts Authority and Diligent both represent that they do not maintain records of delivery drivers supplied by DAO, *see* Jarquin Decl. ¶ 21; McMullen Decl. ¶ 14, Dkt. 31-6, and DAO has not yet appeared in this matter.  But the defendants agree that subpoenaing DAO would allow for the necessary information.  Defs.' Opp'n at 3; Pls.' Reply at 17, Dkt. 32.  Because Parts Authority and Diligent

8

are unable to provide the necessary records, and expanding the notice to Parts Authority's full list of delivery drivers would risk the "stirring up of litigation," *see D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893–94 (D. Md. 1995) (citation and internal quotation marks omitted), the Court will order Diligent to request the information from DAO, *see* Defs.' Ex. C, at 5, Dkt. 31-4 (allowing Diligent to request documents from DAO). If DAO does not cooperate, the Court will entertain a motion for a third-party subpoena. *See Davis v. Dynata, LLC*, No. 22-cv-1062 (SVN), 2023 WL 6216809, at *20 (D. Conn. Sept. 25, 2023).

### D. Notice Method

For the reasons stated above, the Court approves notice by U.S. mail. If the plaintiffs are unable to contact specific potential plaintiffs based on this information, they may renew their motion for the provision of telephone numbers or email addresses. The Court will allow one reminder notice by U.S. mail.

### E. Opt-In Method

Finally, the Court will approve the plaintiffs' proposal to allow potential plaintiffs 60 days to opt in to the lawsuit. *See Ayala*, 12 F. Supp. 3d at 173.

## CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the plaintiffs' Motion to Certify Class, Dkt. 26. A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

May 14, 2025